[No. A130478. First Dist., Div. One. Aug. 11, 2011.]

ARLENE FONTENOT, Plaintiff and Appellant, v.
WELLS FARGO BANK, N.A., et al., Defendants and Respondents.

COUNSEL

Holland Law Firm and George Holland, Jr., for Plaintiff and Appellant.

Severson & Werson and Jan T. Chilton for Defendants and Respondents.

OPINION

**MARGULIES, J.**—Plaintiff Arlene Fontenot sued Wells Fargo Bank, N.A. (Wells Fargo), Mortgage Electronic Registration Systems, Inc. (MERS), and three other entities after she defaulted on a secured real estate loan and lost the property to foreclosure. In the fourth amended complaint, plaintiff alleged the foreclosure was unlawful because Wells Fargo had breached an agreement to forbear from foreclosure, and MERS made an invalid assignment of an interest in the promissory note relating to the property. Wells Fargo and MERS filed demurrers, based in part on recorded documents they contended demonstrated plaintiff's claims to be without factual foundation. The trial court took judicial notice of the requested documents and sustained the demurrers without leave to amend. We affirm.

## I. BACKGROUND

On April 30, 2010, plaintiff filed her fourth amended complaint (complaint) against Wells Fargo, MERS, and three other defendants.[1] The complaint alleged that in 2006, plaintiff gave defendant Alliance Bancorp a $1 million promissory note, secured by a deed of trust in the purchased real property (property). MERS was identified as the "nominee" of the lender in the deed of trust. In November 2007, plaintiff was served with a notice of default by defendant NDEx West, LLC (NDEx), although NDEx was not substituted as trustee of the deed of trust until two months later. In December 2007, MERS assigned the deed of trust to defendant HSBC Bank USA, N.A. (HSBC). Several months later, Wells Fargo was alleged to have foreclosed on the

---

[1] The three other defendants were eventually dismissed and do not figure into this appeal.

property and sold it, although the complaint otherwise contained no explanation of Wells Fargo's relationship to the secured transaction.[2]

The complaint asserted a single cause of action against all defendants for "Wrongful Foreclosure [Negligence per Se]." Within that cause of action, plaintiff alleged several different imperfections in the foreclosure process, including improper or ineffective transfers of the promissory note and security. Plaintiff sought an award of damages, as well as an order voiding the foreclosure sale and her debt.

The trial court had earlier sustained a demurrer to the third amended complaint.[3] In sustaining the demurrer without leave to amend as to three of four causes of action, the court found "allegations concerning improper or ineffective assignments" to be "inconsistent with recorded instruments or . . . with the law governing assignments." The court allowed amendment of the remaining cause of action, ruling "[p]laintiff has alleged the germ of a cause of action for wrongful foreclosure by alleging that she had a written forbearance agreement with [Wells Fargo]. Since the agreement is only effective if in writing, Plaintiff must attach the written agreement. . . ."

Responding to the latter portion of the court's order, the complaint alleged that in February 2008 plaintiff entered into a "SPECIAL FORBEARANCE AGREEMENT" (forbearance agreement) with Wells Fargo. Mindful of the court's instruction, plaintiff attached a copy to the complaint. The forbearance agreement stated that Wells Fargo would suspend further debt enforcement proceedings in return for plaintiff's making a series of five monthly payments, beginning in February 2008. The first four payments were between $8,000 and $8,500, while the last payment was a balloon payment of over $59,000. If plaintiff failed to make the required payments, Wells Fargo was entitled to terminate the forbearance agreement and reinstitute foreclosure proceedings.

Plaintiff alleged she made the first payment under the forbearance agreement as scheduled. Soon thereafter, on March 10, 2008, she received a letter from Wells Fargo (March letter) "stating that the monthly mortgage payments were being reduced effective May 1, 2008 from $7,395.82 to $4,895.82 for the next six months." The complaint alleged plaintiff made two more of the payments required by the forbearance agreement, but in May 2008, she

---

[2] Defendants' brief states, without citation to the record, that Wells Fargo "[took] over the servicing of [plaintiff's] loan." A substitution of trustee recorded with respect to the property designated Wells Fargo as the "attorney in fact" for HSBC.

[3] The appellate record contains rulings by the trial court sustaining demurrers to the second and third amended complaints, but it does not include any pleadings filed in connection with these earlier proceedings.

"accepted the offer" contained in the March letter and submitted a payment of $4,895.82. Wells Fargo refused to accept the payment as satisfaction of plaintiff's obligations and foreclosed in August 2008.[4] Plaintiff did not attach a copy of the March letter to the complaint.

Wells Fargo filed a demurrer, arguing the complaint failed to state a claim and was uncertain. The court sustained the demurrer without leave to amend because it failed to demonstrate plaintiff complied with the forbearance agreement. The court rejected any reliance by plaintiff on the March letter as an amendment of the forbearance agreement because plaintiff had not attached a copy of the letter to the complaint. The court noted it had already rejected plaintiff's other alleged grounds for her cause of action against Wells Fargo and reaffirmed those rulings.

MERS also filed a demurrer. With respect to MERS, the complaint alleged MERS was not the "true" beneficiary under the deed of trust, never had ownership of the promissory note, and never held an assignable interest in the note or deed of trust. As a result, any assignment of the note by MERS to HSBC was invalid. In addition, plaintiff alleged the "trustee substitution" was "invalid due to the fact that the transmission of any interest in Plaintiff's note from MERS is void." In its demurrer, MERS argued plaintiff's allegations were contradicted by the judicially noticeable documents or otherwise legally flawed.

The MERS request for judicial notice attached a series of recorded documents related to the property, such as two deeds of trust, an assignment of a deed of trust, and documents required by the nonjudicial foreclosure procedure, each bearing notarized signatures and the recorder's stamp of Alameda County. The first deed of trust, securing a debt of $1 million, contained a paragraph stating: " 'MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." A later paragraph entitled, "TRANSFER OF RIGHTS IN THE PROPERTY," confirms, "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and

---

[4] Wells Fargo speculates the March letter was a standard letter announcing a periodic adjustment in the interest rate of the underlying promissory note, sent independently of the forbearance agreement and not intended as an offer to modify that agreement. Plaintiff's own allegations raise a question about her claim the March letter was intended as an offer to amend the forbearance agreement, since she quotes the letter as reducing her monthly payments "from $7,395.82 to $4,895.82." None of the monthly amounts due under the forbearance agreement was $7,395.82. For our purposes, it does not matter. We accept the truth of the complaint's allegations in reviewing the court's order sustaining the Wells Fargo demurrer. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr.3d 181, 224 P.3d 920].)

Lender's successors and assigns) and the successors and assigns of MERS.... [¶] ... [¶] ... Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument."[5]

A notice of default was recorded on November 9, 2007, by "NDEx West, LLC, as Agent for Beneficiary." Nearly two months later, on December 27, 2007, MERS recorded an assignment of the first deed of trust to "HSBC BANK USA . . . AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES." This assignment purported to assign "all beneficial interest" under the first deed of trust as well as the note and all monies due under the note. Several weeks later, HSBC, listing Wells Fargo as "its attorney in fact," recorded a substitution of trustee under the first deed of trust, naming NDEx as the new trustee. NDEx recorded a notice of trustee's sale on February 15, 2008, and the deed reflecting the sale of the property was recorded in August. Although she opposed the taking of judicial notice, plaintiff did not contest the authenticity of these documents.

The court granted MERS's request for judicial notice and sustained its demurrer without leave to amend, noting, "The only apparent grounds for suing MERS are the allegations that the deed of trust improperly named MERS as nominee and beneficiary, and that there was no physical delivery of the note to HSBC. . . . Those claims do not state a cause of action against MERS as a matter of law."

## II. DISCUSSION

Plaintiff raises four primary grounds for reversing the trial court's rulings sustaining the two demurrers. With respect to MERS, she argues the trial court erred in taking judicial notice of the various recorded documents and the purported assignment of the note by MERS to HSBC in the assignment of the deed of trust was invalid because MERS did not possess an interest in the note. Because the assignment of the note to HSBC was invalid, plaintiff argues, Wells Fargo had no authority to foreclose. With respect to Wells Fargo, she argues the trial court erred because she stated a claim either for breach of the forbearance agreement, as amended by the March letter, or promissory estoppel.

---

[5] A second deed of trust, entered into simultaneously with the first and securing a debt of $187,500, contained similar language. The second deed of trust is not at issue here.

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]' [Citation.] We may also consider matters that have been judicially noticed." (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors, supra*, 48 Cal.4th at p. 42.)

## A. The Claim Against MERS

### 1. Judicial Notice

The trial court's ruling sustaining the MERS demurrer was based on recorded documents that clarified and, to a degree, contradicted plaintiff's allegations regarding MERS's role in the foreclosure. Plaintiff contends the trial court erred in taking judicial notice of these documents. We review the trial court's ruling on the request for judicial notice for abuse of discretion. (*Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 549 [33 Cal.Rptr.2d 646].)

■ " ' "Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter." ' " (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117 [62 Cal.Rptr.3d 59] (*Poseidon*).) ■ When ruling on a demurrer, "[a] court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading." (*Ibid.*) Accordingly, Evidence Code section 452, subdivisions (c) and (h), respectively, permit a court, in its discretion, to take judicial notice of "[o]fficial acts . . . of any state of the United States" and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

■ Pursuant to these provisions, courts have taken judicial notice of the existence and recordation of real property records, including deeds of trust, when the authenticity of the documents is not challenged. (E.g., *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1367, fn. 8, 1382 [89 Cal.Rptr.3d 659, 124 Cal.Rptr.3d 271]; *Evans v. California Trailer Court, Inc., supra*, 28 Cal.App.4th at p. 549; *Cal-American Income Property Fund II v. County of Los Angeles* (1989) 208 Cal.App.3d 109, 112, fn. 2 [256 Cal.Rptr. 21].) The official act of recordation and the common use of a notary public in the execution of such documents

assure their reliability, and the maintenance of the documents in the recorder's office makes their existence and text capable of ready confirmation, thereby placing such documents beyond reasonable dispute.

In addition, courts have taken judicial notice not only of the existence and recordation of recorded documents but also of a variety of matters that can be deduced from the documents. In *Poseidon*, for example, the court affirmed the trial court's taking judicial notice, in sustaining a demurrer, of the parties, dates, and legal consequences of a series of recorded documents relating to a real estate transaction. (*Poseidon, supra*, 152 Cal.App.4th at pp. 1117–1118.) Although the court recognized that it would have been improper to take judicial notice of the truth of statements of fact recited within the documents, the trial court was permitted to take judicial notice of the legal effect of the documents' language when that effect was clear. (*Ibid.*) Similarly, in *McElroy v. Chase Manhattan Mortgage Corp.* (2005) 134 Cal.App.4th 388 [36 Cal.Rptr.3d 176], the court took judicial notice of the recordation of a notice of default under a deed of trust, the date of the notice's recording, and the amount stated as owing in the notice for the purpose of demonstrating the plaintiffs had notice of the amount claimed to be owing and the opportunity to cure a defective tender. (*Id.* at p. 394.) Judicial notice of the boundaries of a parcel of land on the basis of the property description in a recorded grant deed has also been approved. (*Lockhart v. MVM, Inc.* (2009) 175 Cal.App.4th 1452, 1460 [97 Cal.Rptr.3d 206].)

 Strictly speaking, a court takes judicial notice of facts, not documents. (Evid. Code, § 452, subds. (g), (h).) When a court is asked to take judicial notice of a document, the propriety of the court's action depends upon the nature of the facts of which the court takes notice from the document. As noted in *Poseidon*, for example, it was proper for the trial court to take judicial notice of the dates, parties, and legally operative language of a series of recorded documents, but it would have been improper to take judicial notice of the truth of various factual representations made in the documents. (*Poseidon, supra*, 152 Cal.App.4th at pp. 1117–1118; see similarly *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375 [127 Cal.Rptr.3d 362] (*Herrera*).) Taken together, the decisions discussed above establish that a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face.

Plaintiff concedes the trial court could take judicial notice of recorded documents, but she argues the court improperly took judicial notice of the truth of matters stated in the documents, citing *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057 [31 Cal.Rptr.2d 358, 875 P.2d 73] (*Mangini*), overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276 [63 Cal.Rptr.3d 418, 163 P.3d 106]. In *Mangini*, the court held that while it could take judicial notice of the issuance of a report by the United States Surgeon General regarding the health consequences of smoking, it could not take judicial notice of the truth of the conclusions stated in the report. (*Mangini*, at pp. 1063–1064.) Similarly, the court refused to take judicial notice of the truth of matters reported in newspaper articles. (*Id.* at p. 1065.) As is evident from this summary, the documents considered in *Mangini* were not the type of legally operative documents featured here. Rather, they were fundamentally informative documents, and the parties sought judicial notice of the facts contained in the documents without demonstrating the facts were "not reasonably subject to dispute." (Evid. Code, § 452, subd. (h).) The other cases cited by plaintiff, such as *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1389, footnote 13 [105 Cal.Rptr.3d 521] and *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1103–1104 [87 Cal.Rptr.3d 424], are not different.[6]

Despite her general objection, plaintiff contests the taking of judicial notice of only one specific fact—that MERS was the beneficiary of the first deed of trust, which the court noticed on the basis of MERS's designation as beneficiary in the document. Contrary to plaintiff's argument, MERS's status as beneficiary was not the type of fact that is generally an improper subject of judicial notice under *Mangini*, since its status was not a matter of fact existing apart from the document itself. Rather, MERS was the beneficiary under the deed of trust because, as a legally operative document, the deed of trust designated MERS as the beneficiary. Given this designation, MERS's status was not reasonably subject to dispute. The other matters noticed by the trial court similarly could be inferred from the text or legal effect of the documents themselves, needing no outside confirmation. We find no abuse of discretion.

Just prior to argument, plaintiff forwarded the recently published decision, *Herrera, supra,* 196 Cal.App.4th 1366, in which the court reversed a grant of summary judgment on the ground the trial court improperly took judicial

[6] One case cited by plaintiff, *Abernathy Valley, Inc. v. County of Solano* (2009) 173 Cal.App.4th 42, 54, footnote 6 [92 Cal.Rptr.3d 459], appears to differ with the weight of California authority. That case declined to take judicial notice of deeds, judgments, and indentures "as evidence of actual conveyances" because such use would require accepting the "truth of the facts stated therein." (*Ibid.*) Because its holding is stated in a conclusory manner, the exact reasoning of the decision is unclear, and we do not find it to be persuasive authority in this context.

notice of statements made within recorded documents. (*Id.* at pp. 1375–1376.) *Herrera* is not inconsistent with our decision. In *Herrera*, the defendants sought judicial notice of the truth of recited facts within the recorded documents—for example, that a particular party " 'is the present beneficiary under' " a particular deed of trust. (*Id.* at p. 1375.) As the court noted, this is the type of statement found in *Poseidon* to be ineligible for judicial notice. (*Herrera*, at p. 1375.) In contrast, the facts of which the trial court here took judicial notice arose from the legal effect of the documents, rather than any statements of fact within them.[7] (*Herrera*, at p. 1375.)

### 2. *Plaintiff's Claim*

#### a. *Background*

Plaintiff's claim against MERS challenges an aspect of the "MERS System," a method devised by the mortgage banking industry to facilitate the securitization of real property debt instruments. As described in *Mortgage Electronic Registration Systems v. Nebraska Dept. of Banking & Finance* (2005) 270 Neb. 529 [704 N.W.2d 784], MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. (*Id.*, 704 N.W.2d at p. 785.)

Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. (11 Thompson on Real Property (2d ed. 1998) § 94.02(b)(7)(i), p. 346.) Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as "nominee" for the lender, and granted the authority to exercise legal rights of the lender. This aspect of the system has come under attack in a number of state and federal decisions across the country, under a variety of legal theories. The decisions have generally, although by no means universally, found that the use of MERS does not invalidate a foreclosure sale that is otherwise substantively and procedurally proper.

---

[7] *Herrera* also found the trial court improperly took judicial notice of the legal effect of an assignment of a particular deed of trust, but the basis of its holding was the lack of proof in the record that the party making the assignment had the authority to do so—in other words, that the record did not contain evidence of the entire chain of title of the mortgage. (*Herrera, supra*, 196 Cal.App.4th at p. 1375.) Because the original deed of trust demonstrating MERS's authority is present in this appellate record, that issue could not arise here.

Our Courts of Appeal have only recently addressed MERS's role, but both published decisions have come down on the side of MERS.[8] In *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 [121 Cal.Rptr.3d 819] (*Gomes*), the plaintiff sought to prevent foreclosure on his home. He sued MERS, among others, alleging he was unaware of the identity of the owner of his promissory note, but believed the owner had not authorized MERS to proceed with the foreclosure. The plaintiff sought to enjoin foreclosure in the absence of proof that MERS was authorized by the note's owner to proceed. (*Id.* at p. 1152.) The court rejected the claim on both procedural and substantive grounds. With respect to the former, the court concluded the " 'comprehensive' " statutory framework regulating nonjudicial foreclosure, Civil Code sections 2924 through 2924k, did not require the agent of a beneficial owner, such as MERS, to demonstrate that it was authorized by the owner before proceeding with foreclosure, at least in the absence of a factual allegation suggesting the agent lacked authority. (*Gomes*, at pp. 1154–1156.) As the court reasoned, Civil Code section 2924, subdivision (a)(1), which states that a trustee, mortgagee, or beneficiary, or an agent of any of them, may initiate foreclosure, does not include a requirement that an agent demonstrate authorization by its principal. (*Gomes*, at pp. 1155–1156.) The court also found no substantive basis for the challenge, noting, as here, the plaintiff had agreed in the deed of trust that MERS could proceed with foreclosure and nonjudicial sale in the event of a default. Because the deed of trust did not require MERS to provide further assurances of its authorization prior to proceeding with foreclosure, the plaintiff was not entitled to demand such assurances. (*Id.* at p. 1157.)

A different type of MERS challenge was addressed in *Ferguson v. Avelo Mortgage, LLC* (2011) 195 Cal.App.4th 1618 [126 Cal.Rptr.3d 586] (*Ferguson*). The *Ferguson* plaintiffs were tenants in a home sold at a nonjudicial foreclosure sale. Originally, MERS was designated as a nominee and beneficiary in the deed of trust. On August 3, Quality Loan Service Corporation (Quality) recorded a notice of default, although there was no indication in the public record of Quality's authority to act with respect to the property at the time. The defendant, Avelo Mortgage, LLC (Avelo), had executed a substitution of trustee designating Quality as trustee the prior day,

---

[8] There are a large number of decisions from federal district and bankruptcy courts in California addressing claims based on MERS's role in residential foreclosures, which have reached conflicting conclusions. (See, e.g., *Sacchi v. Mortgage Electronic Registration Systems, Inc.* (C.D.Cal., June 24, 2011, No. CV 11-1658 AHM (CWx)) 2011 U.S.Dist. Lexis 68007; *In re Doble* (Bankr. S.D.Cal., Apr. 14, 2011, No. 10-11296-MM13) 2011 Bankr. Lexis 1449; *Marks v. Green Tree Servicing* (N.D.Cal., Oct. 27, 2010, No. C 10-03593 SI) 2010 U.S.Dist. Lexis 119979; *Castillo v. Skoba* (S.D.Cal., Oct. 8, 2010, No. 10cv1838 BTM) 2010 U.S.Dist. Lexis 108432; *Ohlendorf v. American Home Mortgage Servicing* (E.D.Cal., Mar. 31, 2010, No. CIV. S-09-2081 LKK/EFB) 2010 U.S.Dist. Lexis 31098.) Plaintiff does not cite, and we are unaware of, any federal decision addressing precisely the issue raised here.

August 2, but that substitution was not recorded until months later, on November 9. Further, at the time Avelo executed the substitution, there was similarly no indication in the public record of its authority to act. Only several weeks later, on August 22, did MERS assign its interest under the deed of trust to Avelo. Notice of the trustee's sale was delivered on November 4 and recorded the same day as the substitution of trustee designating Quality, November 9. The trustee's sale occurred in July of the following year. (*Id.* at p. 1621.)

Affirming the grant of a demurrer, the court initially addressed the issue of tender, concluding that the plaintiffs were required to allege tender of the amount due under the note when bringing an action to void a nonjudicial foreclosure sale. (*Ferguson, supra*, 195 Cal.App.4th at p. 1624.) It then turned to two arguments concerning MERS's role: MERS lacked the power to foreclose because it was not the holder of the underlying promissory note, and the sale was invalid because the foreclosing parties did not have authority to proceed as a result of the irregularities in the documentation. Citing a series of federal district court decisions, the court first held that MERS was entitled to initiate foreclosure despite having no ownership interest in the promissory note because it was the beneficiary under the deed of trust. (*Id.* at pp. 1626–1627.) Turning to the second issue, the court agreed with the plaintiffs that the notice of default was defective because Avelo lacked legal authority to execute a substitution of trustee until it had been assigned MERS's interest under the deed of trust. The court found the notice of sale valid under Civil Code section 2934a, subdivision (b), however, because the notice of sale was not recorded prior to the substitution of trustee. (*Ferguson*, at p. 1628 & fn. 5.) Given the three-month cure period between the recording of the notice of default and notice of sale and the long delay after the recordation of the substitution of trustee before the sale was concluded, the court declined to invalidate the foreclosure on the basis of the irregular documentation. (*Ibid.*)

### b. *Plaintiff's Allegations*

With that background, we address plaintiff's claims. Referring to the fact that the assignment of the deed of trust purported to assign to HSBC both MERS's interest in the deed of trust *and* the underlying note, plaintiff explains "the gravamen of [her] claim against MERS was that it had wrongfully assigned the Note and Deed of Trust to Defendant HSBC" because MERS lacked the authority to make an assignment of the underlying promissory note.

The complaint contains two allegations regarding the MERS's purported lack of authority to assign the note. First, the complaint alleges defendants "bear the burden of proving" a proper assignment occurred, and

they "lack evidence sufficient to prove a valid assignment." As so stated, the claim fails because MERS did not bear the burden of proving a valid assignment. The nonjudicial foreclosure statutes are a comprehensive scheme designed "(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777].) As a result, a nonjudicial foreclosure sale is presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption. (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258 [26 Cal.Rptr.3d 413] ["It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity."]; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86, fn. 4 [20 Cal.Rptr.3d 1]; *Wolfe v. Lipsy* (1985) 163 Cal.App.3d 633, 639 [209 Cal.Rptr. 801], disapproved on other grounds in *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 36 [283 Cal.Rptr. 584, 812 P.2d 931].) Given the presumption of regularity, if plaintiff contended the sale was invalid because HSBC had no authority to conduct the sale, the burden rested with plaintiff affirmatively to plead facts demonstrating the impropriety.

■ In contending the burden rested with MERS to demonstrate a valid assignment, plaintiff cites such cases as *Neptune Society Corp. v. Longanecker* (1987) 194 Cal.App.3d 1233 [240 Cal.Rptr. 117], which stands for the general principle that the party asserting a right under an assigned instrument bears the burden of demonstrating the assignment. (*Id.* at p. 1242.) While this may be a correct statement of law in an action to collect on an assigned debt, such actions are not subject to the presumption of regularity afforded the nonjudicial foreclosure process. As a result, these decisions are not persuasive authority in this context.

■ Second, the complaint alleges MERS lacked the authority to assign the note because it was merely a nominee of the lender and had no interest in the note. Contrary to plaintiff's claim, the lack of a possessory interest in the note did not necessarily prevent MERS from having the authority to assign the note. While it is true MERS had no power *in its own right* to assign the note, since it had no interest in the note to assign, MERS did not purport to act for its own interests in assigning the note. Rather, the assignment of deed of trust states that MERS was acting as nominee for the lender, which *did* possess an assignable interest. A "nominee" is a person or entity designated to act for another in a limited role—in effect, an agent. (*Born v. Koop* (1962) 200 Cal.App.2d 519, 528 [19 Cal.Rptr. 379]; *Cisco v. Van Lew* (1943) 60 Cal.App.2d 575, 583–584 [141 P.2d 433].) The extent of MERS's authority as a nominee was defined by its agency agreement with the lender, and

whether MERS had the authority to assign the lender's interest in the note must be determined by reference to that agreement. (See, e.g., *van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571 [6 Cal.Rptr.3d 746] [agency typically arises by express agreement]; *Anderson v. Badger* (1948) 84 Cal.App.2d 736, 743 [191 P.2d 768] [existence and extent of agent's duties are determined by the agreement between agent and principal]; Civ. Code, § 2315 [agent has such authority as principal confers upon agent].) Accordingly, the allegation that MERS was merely a nominee is insufficient to demonstrate that MERS lacked authority to make a valid assignment of the note on behalf of the original lender.[9]

■ Plaintiff also argues any purported assignment by MERS was invalid under the common law of secured transactions. Her argument rests on the general principle that because the security for a debt is "a mere incident of the debt or obligation which it is given to secure" (*Hayward Lbr. & Inv. Co. v. Naslund* (1932) 125 Cal.App. 34, 39 [13 P.2d 775]), the assignment of an interest in the security for a debt is a nullity in the absence of an assignment of the debt itself. (E.g., *Kelley v. Upshaw* (1952) 39 Cal.2d 179, 192 [246 P.2d 23]; 4 Witkin, Summary of Cal. Law (10th ed. 2005) Security Transactions in Real Property, § 105, p. 899.) The assignment of the deed of trust, however, expressly stated that MERS assigned its interest in the deed of trust "[t]ogether with the note or notes therein described or referred to."[10] Accordingly, to plead a claim on this ground plaintiff was required to allege this assignment to HSBC was invalid. Because, as discussed above, plaintiff failed adequately to plead such invalidity, she failed to state a cause of action for wrongful foreclosure on the ground HSBC did not receive an assignment of both the note and its security.

There is a further, overriding basis for rejecting a claim based solely on the alleged invalidity of the MERS assignment. Plaintiff's cause of action ultimately seeks to demonstrate that the nonjudicial foreclosure sale was invalid because HSBC lacked authority to foreclose, never having received a proper assignment of the debt. In order to allege such a claim, it was not enough for plaintiff to allege that MERS's purported assignment of the note in the assignment of deed of trust was ineffective. Instead, plaintiff was

[9] Plaintiff cites no authority suggesting the lender was legally precluded from granting MERS the authority, acting as its agent, to assign the lender's interest in the note, and we are aware of none. In general terms, an agent can be authorized to do any act the principal may do. (Civ. Code, §§ 2304, 2305; *Heiman v. Workers' Comp. Appeals Bd.* (2007) 149 Cal.App.4th 724, 738 [57 Cal.Rptr.3d 56]; *Preis v. American Indemnity Co.* (1990) 220 Cal.App.3d 752, 761 [269 Cal.Rptr. 617].)

[10] Although the complaint contained an allegation that MERS assigned an interest in the deed of trust "alone," the trial court was entitled to take judicial notice of the assignment of deed of trust and rely on it in disregarding the contradictory allegation in the complaint. (*Poseidon, supra,* 152 Cal.App.4th at p. 1117.)

required to allege that HSBC did not receive a valid assignment of the debt *in any manner*. Plaintiff rests her argument on the documents in the public record, but assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded. The lender could readily have assigned the promissory note to HSBC in an unrecorded document that was not disclosed to plaintiff.[11] To state a claim, plaintiff was required to allege not only that the purported MERS assignment was invalid, but also that HSBC did not receive an assignment of the debt in any other manner. There is no such allegation.

We also note a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. (*Melendrez v. D & I Investment, Inc., supra*, 127 Cal.App.4th at p. 1258; *Knapp v. Doherty, supra*, 123 Cal.App.4th at p. 86, fn. 4 ["A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure *and the resulting prejudice.*' " (italics added)]; *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097–1098 [106 Cal.Rptr.2d 443] [collusion resulted in inadequate sale price]; *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700 [86 Cal.Rptr.2d 657] [failure to comply with procedural requirements must cause prejudice to plaintiff].) Prejudice is not presumed from "mere irregularities" in the process. (*Meux v. Trezevant* (1901) 132 Cal. 487, 490 [64 P. 848].) Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note (see, e.g., *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7–8 [89 Cal.Rptr. 323] [failure by lender to accept timely tender]), nor that the original lender would have refrained from foreclosure under the circumstances presented. If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note.

Finally, plaintiff contends the deed of trust was ambiguous because it designated MERS as both the "nominee for the beneficiary" and as the

---

[11] The first deed of trust states: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity . . . that collects Periodic Payments due under the Note and this Security Instrument . . . ."

"beneficiary." An entity cannot be, plaintiff argues, both an agent and a principal. The record does not support the claimed ambiguity. Contrary to plaintiff's assertion, the deed of trust did *not* designate MERS as both beneficiary of the deed of trust and nominee for the beneficiary; rather, it states that MERS is the beneficiary, acting as a nominee for the lender. There is nothing inconsistent in MERS's being designated both as the beneficiary and as a nominee, i.e., agent, for the lender. The legal implication of the designation is that MERS may exercise the rights and obligations of a beneficiary of the deed of trust, a role ordinarily afforded the lender, but it will exercise those rights and obligations only as an agent for the lender, not for its own interests. Other statements in the deed of trust regarding the role of MERS are consistent with this interpretation, and there is nothing ambiguous or unusual about the legal arrangement. Plaintiff's argument appears to be premised on the unstated assumption that only the owner of the promissory note can be designated as the beneficiary of a deed of trust, but she cites no legal authority to support that premise.[12]

## B. *The Claim Against Wells Fargo*

Plaintiff contends the trial court erred in sustaining Wells Fargo's demurrer because she adequately alleged either a claim for wrongful foreclosure, based on Wells Fargo's refusal to accept performance under the forbearance agreement as amended by the March letter, or a claim for promissory estoppel. The trial court declined to consider the allegations regarding the March letter because plaintiff did not attach a copy of the letter to the complaint.

Plaintiff argues that under the ordinary rules of pleading, she was entitled to plead the legal effect of the March letter without attaching a copy to the complaint. (E.g., *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198–199 [126 Cal.Rptr.2d 908, 57 P.3d 372].) While this is true as a general principle, the argument fails to take account of the trial court's ruling on the demurrer to the third amended complaint, which expressly granted plaintiff leave to amend on the condition she attach a copy of the forbearance agreement to the amended pleading. Because a trial court is entitled to grant leave to amend "upon any terms as may be just" (Code Civ. Proc., § 472a, subd. (c)), the ordinary rules of pleading did not apply in these circumstances.

Whether to grant leave to amend under Code of Civil Procedure, section 472a is entrusted to the sound discretion of the trial court, and we

---

[12] In her reply brief, plaintiff also contends MERS failed to demonstrate it had the authority to foreclose because it did not show the foreclosure was " 'necessary to comply with law or custom,' " as provided in the deed of trust. Because this argument was not raised in the opening brief, it was waived. (E.g., *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427–428 [115 Cal.Rptr.3d 707].)

review the trial court's decision for abuse of discretion. (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1538 [282 Cal.Rptr. 80].) While plaintiff argues the trial court was without power to impose a "higher pleading standard," we find no abuse of discretion in the trial court's conditioning leave to amend on attachment of the forbearance agreement. Plaintiff had already filed three versions of the complaint at the time the trial court entered its order, each one unsuccessful in stating a cause of action. Despite the obvious nature of a claim for breach of a forbearance agreement, it was not until the third iteration that plaintiff suggested the possibility of such a cause of action. Under those circumstances, the trial court was justified in requiring plaintiff to attach a copy of the agreement, thereby allowing the legal adequacy of the purported agreement to be tested on demurrer and avoiding further delay and unnecessary motion practice. The ruling placed little burden on plaintiff, since she presumably had access to the written agreement on which she purported to premise her claim.[13]

Plaintiff also argues the court's order sustaining the demurrer to the third amended complaint did not require her to attach a copy of the March letter because it called only for attachment of the forbearance agreement. By claiming the March letter constituted a written amendment to the terms of the forbearance agreement, however, plaintiff effectively made it a part of the forbearance agreement. Further, because plaintiff conceded she did not comply with the terms of the forbearance agreement itself, attaching only that document served little purpose. The trial court did not abuse its discretion in concluding its order requiring attachment of the forbearance agreement included any written amendments on which plaintiff intended to rely.

Plaintiff argues she should have been granted leave to amend, presumably to attach a copy of the March letter. In deciding whether the trial court abused its discretion in denying leave to amend, "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We find no abuse because, notwithstanding the allegations of the complaint and her present argument, plaintiff provided the trial court with no reason to

---

[13] Plaintiff relies on *Armenta ex rel. City of Burbank v. Mueller Co.* (2006) 142 Cal.App.4th 636 [47 Cal.Rptr.3d 832], which held it an abuse of discretion for the trial court to permit the addition of new plaintiffs only on the condition the new parties respond to discovery. (*Id.* at p. 642.) *Armenta* was decided under Code of Civil Procedure section 473, subdivision (a), governing amendment after the close of pleadings, rather than section 472a. Further, we find no useful parallel in the very different condition, submission to discovery, attached to amendment in *Armenta*.

believe the March letter constituted an amendment to the forbearance agreement. To do so, it was necessary only for plaintiff to submit a copy of the March letter with her opposition to Wells Fargo's demurrer, thereby permitting the court to evaluate the text of the purported amendment and determine whether it could possibly provide a foundation for her allegations. By declining to submit a copy to the trial court, plaintiff failed in carrying her burden to demonstrate a "reasonable possibility" she could cure the defect in her cause of action.[14]

 Finally, plaintiff contends she adequately pleaded a claim for promissory estoppel, based on an alleged promise by Wells Fargo not to foreclose. "In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . .' [Citations.] Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310 [96 Cal.Rptr.2d 747, 1 P.3d 63].) "The purpose of this doctrine is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249 [74 Cal.Rptr. 398, 449 P.2d 462].) Accordingly, a plaintiff cannot state a claim for promissory estoppel when the promise was given in return for proper consideration. The claim instead must be pleaded as one for breach of the bargained-for contract. (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 672–673; see *Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1040–1041 [107 Cal.Rptr.3d 683] [promissory estoppel appropriate only where no consideration for promise].) Here, the only alleged promise not to foreclose is contained in the forbearance agreement. Because Wells Fargo's promise not to foreclose in the forbearance agreement was given for proper consideration, in the form of plaintiff's agreement to resume making payments on the promissory note, the complaint cannot state a claim for promissory estoppel.

---

[14] Plaintiff could even have provided a copy of the March letter to this court. "A showing that the complaint can be amended to state a cause of action 'need not be made in the trial court so long as it is made to the reviewing court.' " (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1041–1042 [134 Cal.Rptr.2d 260].) Because no copy has been presented, we have no more basis than the trial court for finding a reasonable possibility plaintiff can state a viable cause of action.

## III. DISPOSITION

The judgment of the trial court is affirmed.

Marchiano, P. J., and Banke, J., concurred.