Filed 11/18/13  Palomera v. Downey Savings and Loan CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JUAN PALOMERA et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>DOWNEY SAVINGS AND LOAN ASSOCIATION F.A., et al.,<br><br>Defendants and Respondents. | B242225<br><br>(Los Angeles County<br>Super. Ct. No. VC059938) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Margaret Miller Bernal, Judge.  Affirmed.

Arya Law Center and Brian T. Stuart, for Plaintiffs and Appellants.

Malcolm Cisneros, William G. Malcolm and Brian S. Thomley, for Defendants and Respondents Central Mortgage Co., Deutsche Bank National Trust Co. and Mortgage Electronic Registration Systems, Inc.

_____

Juan and Gloria Palomera sued their original lender, Downey Savings and Loan Association, and a number of other defendants including Deutsche Bank National Trust Co., Mortgage Electronic Registration Systems, Inc. (MERS) and Central Mortgage Co. (CMC) alleging defendants had wrongfully foreclosed on the Palomeras' Pico Rivera home in August 2011. The trial court sustained the demurrers of Deutsche Bank, MERS and CMC to this claim without leave to amend on the grounds the Palomeras lacked standing to sue under California's nonjudicial foreclosure statute, Civil Code sections 2924 through 2924k,[1] and securitization of the note did not prevent defendants from enforcing their interest in the deed of trust. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2004 the Palomeras executed a promissory note in favor of Downey Savings for the principal amount of $290,000. The note was secured by a deed of trust encumbering the property, which was duly recorded. In a provision entitled "Sale of Note; Change of Loan Servicer; Notice of Grievance," the deed of trust provided "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note."

According to the Palomeras, the note was securitized and deposited into Trust 2004-AR2 before October 29, 2004. In December 2005 Downey Savings assigned its beneficial interest in the deed of trust to MERS, both as the beneficiary of the deed of trust and as the nominee of CMC. In April 2011, after the Palomeras had fallen behind in their payments,[2] MERS, as the nominee of CMC, assigned its beneficial interest in the

---

[1]     Statutory references are to the Civil Code unless otherwise specified.

[2]     In November 2009 Juan Palomera filed a voluntary petition for bankruptcy, which was discharged in April 2010. The bankruptcy petition listed the value of the property as $180,000 subject to a secured claim of $317,081 in favor of CMC.

2

deed of trust to CMC. A notice of default was recorded on April 13, 2011 by MTC Financial, Inc. as agent for the beneficiary. CMC, identifying itself as the beneficiary, executed a substitution of trustee on May 16, 2011 (recorded on July 19, 2011), substituting MTC Financial (dba Trustee Corps) as trustee of the deed of trust. Also on May 16, 2011 (but not recorded until August 29, 2011) CMC executed an assignment of deed of trust transferring its beneficial interest to Deutsche Bank.

When the Palomeras failed to cure the default, Trustee Corps, in its capacity as trustee, recorded a notice of trustee's sale dated July 14, 2011. The foreclosure sale proceeded on August 15, 2011, and the property was sold to Deutsche Bank. On August 29, 2011 Trustee Corps recorded a trustee's deed upon sale reflecting sale of the property to Deutsche Bank.

On November 10, 2011 the Palomeras filed a complaint seeking damages, declaratory relief and restitution and alleging several causes of action, including wrongful foreclosure,[3] fraud, slander of title, quiet title and unfair business practices. With respect to the first cause of action, the complaint asserted Deutsche Bank, MERS and CMC lacked standing to foreclose because they had failed to perfect their security interest in the property and the deed of trust now held by Deutsche Bank was void. In particular, the Palomeras alleged the promissory note had been deposited by Downey Savings into a securitized trust, and, by operation of law, the deed of trust had been assigned to the same trust. (See § 2936 ["[t]he assignment of a debt secured by mortgage carries with it the

---

[3]     The Palomeras titled this cause of action as "Lack of Standing to Foreclose," but we understand the claim as a variant of a wrongful foreclosure cause of action. The failure of the Palomeras to title their cause of action as one for wrongful foreclosure is irrelevant. (See, e.g., *Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419, 427 ["the nature of a cause of action does not depend on the label the plaintiff gives it"]; *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* (2002) 100 Cal.App.4th 1017, 1034 ["scope of the duty does not depend on the labels given to the causes of action in the third party complaint"]; *Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.* (2002) 95 Cal.App.4th 1273, 1281 ["[A] court is not bound by the captions or labels of a cause of action in a pleading. The nature and character of a pleading is to be determined from the *facts alleged,* not the name given by the pleader to the cause of action."].)

security"].)  Downey's subsequent assignment of the deed of trust to MERS was thus a legal nullity, as were all subsequent assignments of the deed of trust.

The trial court sustained Deutsche Bank, MERS and CMC's demurrers to the first amended complaint, including the wrongful foreclosure cause of action.[4]  Relying on the decisions in *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 (*Gomes*) and *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, the court ruled California's nonjudicial foreclosure scheme does not authorize a judicial action to challenge the authority or standing of the person initiating a foreclosure. Further, under *Gomes* securitization of the note did not prevent Deutsche Bank, MERS and CMC from enforcing their interest in the deed of trust.[5]

## CONTENTIONS

The Palomeras contend the trial court misapplied *Gomes* and the cases following it to the facts they alleged; post-securitization assignments are void under section 2936; and they are entitled to challenge post-sale any wrongful act of the foreclosing entity, including its authority to initiate foreclosure.

## DISCUSSION

1.  *Standard of Review*

On appeal from an order dismissing an action after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory.  (*McCall v. PacifiCare of Cal.*, *Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)  We may also consider matters that have been judicially noticed.  (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; see *Serrano*

---

[4]     The Palomeras filed a first amended complaint on February 1, 2012 containing the same allegations.  They have not appealed from the dismissal of their other claims.

[5]     The Palomeras appealed directly from the order sustaining the demurrers before entry of the order dismissing the complaint.  The court's order of dismissal was signed and filed on July 2, 2012.  We treat the Palomeras' premature notice of appeal, filed June 19, 2012, as filed immediately after entry of judgment.  (Cal. Rules of Court, rule 8.104(d)(2).)

*v. Priest* (1971) 5 Cal.3d 584, 591.) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry,* at p. 967; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; see *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 [demurrer tests sufficiency of complaint based on facts included in the complaint, those subject to judicial notice and those conceded by plaintiffs].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

> 2. *The Trial Court Did Not Err in Concluding the Palomeras Lacked Standing To Challenge the Sale of Their Home After Nonjudicial Foreclosure*

Sections 2924 through 2924k "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 (*Moeller*).)[6] "The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Id.* at p. 830; *Gomes, supra,* 192 Cal.App.4th at p. 1154.) "'Because of the exhaustive nature of this scheme, California appellate courts have

---

[6]     In *Moeller* this court summarized the procedures leading to a nonjudicial foreclosure: "Upon default by the trustor [under a deed of trust containing a power of sale], the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. [Citations.] The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. [Citations.] After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. [Citations.] After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. [Citations.] The trustee may postpone the sale at any time before the sale is completed. [Citations.] If the sale is postponed, the requisite notices must be given. [Citation.] . . . The property must be sold at public auction to the highest bidder." (*Moeller, supra,* 25 Cal.App.4th at p. 830.)

refused to read any additional requirements into the non-judicial foreclosure statute.'" (*Gomes,* at p. 1154; see *Moeller,* at p. 834 ["[i]t would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings"].)

In recent years "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511 (*Jenkins*).) Due to the ubiquity of the MERS system,[7] virtually all of these decisions involved allegations that securitization and subsequent assignment of the debt through the MERS system resulted in the separation of the promissory note from the deed of trust, which plaintiffs like the Palomeras have alleged results in the invalidity of subsequent assignments, including the ultimate sale of the property. (See, e.g., *Gomes, supra,* 192 Cal.App.4th at p. 1155 [authority of lender's nominee (MERS) to initiate foreclosure proceedings could not be challenged where trust deed named lender's nominee and granted it foreclosure rights; "[t]he recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures"]; *Robinson v. Countrywide Home Loans, Inc., supra,* 199 Cal.App.4th at p. 46 [statutory scheme does not provide for preemptive suits challenging standing];

_____

[7] The MERS system was devised by the mortgage banking industry to facilitate the securitization of real property debt instruments. (See *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267.) "MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records." (*Ibid.;* see generally *Gomes, supra,* 192 Cal.App.4th at p. 1151 [describing MERS].)

*Herrera v. Federal Nat. Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1505 [original lender's nominee (MERS) could initiate foreclosure proceedings despite absence of agency agreement between MERS and original lender's successors and assigns]; *Shuster v. BAC Home Loans Servicing*, LP (2012) 211 Cal.App.4th 505, 511 ["California's statutory nonjudicial foreclosure scheme (§§ 2924-2924k) does not require that the foreclosing party have a beneficial interest in or physical possession of the note"]; *Jenkins,* at p. 513 [nonjudicial foreclosure statutes "do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale"]; cf. *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440-442 (*Debrunner*) [foreclosing beneficiary-creditor need not produce promissory note or otherwise prove it holds note to commence nonjudicial foreclosure under a real property security agreement].)  Indeed, *Debrunner* answered the more specific question raised here whether the foreclosing party must have actual possession of the promissory note and be able to produce it in order to pursue nonjudicial foreclosure:  Based on much of the same reasoning found in *Gomes* (particularly the absence of any express requirement in the nonjudicial foreclosure statutes), the *Debrunner* court concluded the foreclosing beneficiary-creditor need not produce the promissory note or otherwise prove it holds the note to proceed with nonjudicial foreclosure on a real property security.  (*Id.* at pp. 440-442.)

The Palomeras argue we should reject this extensive authority for several reasons:  First, they did not consent to have MERS act as the beneficiary-nominee; second, these decisions cannot be reconciled with section 2936, which provides "[t]he assignment of a debt secured by mortgage carries with it the security"; and, third, their challenge was not preemptive but was instead filed after the foreclosure sale, at which stage the former homeowner may attempt to vacate the sale or recover damages based on procedural irregularities.  (See, e.g., *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104-105.)

The first contention is meritless:  The record simply does not support the Palomeras' contention they failed to consent to MERS acting as the beneficiary-nominee.

To the contrary, the deed of trust specifically authorized Downey Savings to sell "[t]he Note or a partial interest in the Note" and to change the loan servicer as frequently as desired without prior notice to the Palomeras. This broadly worded provision authorized securitization and transfer of the obligation as directed by Downey Savings, the original beneficiary, any of its successors-in-interest, *or any of their nominees*, including MERS. (See *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267 (*Fontenot*) ["[u]nder the MERS System . . . MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender"].)[8] The Palomeras do not explain why MERS's administration of transactions

---

[8] In *Fontenot, supra,* 198 Cal.App.4th 256 the plaintiff homeowner gave the original lender a promissory note secured by a deed of trust on her home. MERS was identified as the nominee of the lender in the deed of trust. (*Id.* at p. 260.) Another entity served the plaintiff with a notice of default, after which MERS assigned the deed of trust to HSBC. (*Ibid.*) Wells Fargo later foreclosed on the property and sold it. (*Id.* at pp. 260-261.) Seeking an order to vacate the sale, the plaintiff alleged "MERS was not the 'true' beneficiary under the deed of trust, never had ownership of the promissory note, and never held an assignable interest in the note or deed of trust. As a result, any assignment of the note by MERS to HSBC was invalid." (*Id.* at p. 262.) The trial court sustained MERS's demurrer to the complaint without leave to amend. (*Id.* at p. 263.)

In affirming, the Court of Appeal explained: "[T]he lack of a possessory interest in the note did not necessarily prevent MERS from having the authority to assign the note. While it is true MERS had no power *in its own right* to assign the note, since it had no interest in the note to assign, MERS did not purport to act for its own interests in assigning the note. Rather, the assignment of deed of trust states that MERS was acting as nominee for the lender, which *did* possess an assignable interest. A 'nominee' is a person or entity designated to act for another in a limited role—in effect, an agent. [Citations.] The extent of MERS's authority as a nominee was defined by its agency agreement with the lender, and whether MERS had the authority to assign the lender's interest in the note must be determined by reference to that agreement. [Citations.] Accordingly, the allegation that MERS was merely a nominee is insufficient to demonstrate that MERS lacked authority to make a valid assignment of the note on behalf of the original lender." (*Fontenot, supra,* 198 Cal.App.4th at pp. 270-271.)

The court also rejected the argument alluded to here that MERS could not act both as a nominee for the beneficiary and as the beneficiary: "Contrary to plaintiff's assertion, the deed of trust did *not* designate MERS as both beneficiary of the deed of trust and nominee for the beneficiary; rather, it states that MERS is the beneficiary, acting as a nominee for the lender. There is nothing inconsistent in MERS's being designated both

involving the securitized loan interests, as the beneficiary or as the nominee for the beneficiary, would be inconsistent with this provision.

The second contention is also easily resolved. The Palomeras argue securitization of the note and subsequent transfers of the note (or digitized fractions thereof) cannot be reconciled with section 2936. The Palomeras cite *Fontenot* for the proposition that "an assignment of an interest in the security for a debt is a nullity in the absence of an assignment of the debt itself." (*Fontenot, supra,* 198 Cal.App.4th at p. 271.) *Fontenot*, however, rejected this argument because the assignment of the deed of trust at issue stated MERS had assigned its interest "'[t]ogether with the note or notes therein described or referred to.'" (*Ibid.*) Indeed, an equivalent version of this standard language appears in each of the assignments of the deed of trust in this case and, we suspect, in every standardized assignment used in California or elsewhere. Section 2936, therefore, does not aid the Palomeras' attack on the securitization and subsequent assignment of the note.

The Palomeras' third contention—that the trial court improperly characterized their lawsuit as an impermissible preemptive attack on the foreclosure of their home—is accurate, but the court's error does not warrant the relief they sought. The elements of a wrongful foreclosure claim are: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." (*Lona v. Citibank, N.A., supra,*

---

as the beneficiary and as a nominee, i.e., agent, for the lender. The legal implication of the designation is that MERS may exercise the rights and obligations of a beneficiary of the deed of trust, a role ordinarily afforded the lender, but it will exercise those rights and obligations only as an agent for the lender, not for its own interests. Other statements in the deed of trust regarding the role of MERS are consistent with this interpretation, and there is nothing ambiguous or unusual about the legal arrangement." (*Fontenot, supra,* 198 Cal.App.4th at p. 273.)

202 Cal.App.4th at p. 104; accord, *Chavez v. Indymac Mortgage Services, supra,* 219 Cal.App.4th at p. 1062.) "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.' [Citations.] This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity. [Citation.] . . . [Citations.] It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity." (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258; see also *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86, fn. 4 ["[a] nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure and the resulting prejudice'"].) Citing *Melendrez,* the *Fontenot* court concurred, "a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." (*Fontenot, supra,* 198 Cal.App.4th at p. 272; accord, *Debrunner, supra,* 204 Cal.App.4th at p. 443.) "Prejudice is not presumed from 'mere irregularities' in the process." (*Fontenot,* at p. 272.)[9]

The Palomeras cannot allege such prejudice here. To paraphrase the court in *Jenkins, supra,* 216 Cal.App.4th 497, "Even if any subsequent transfers of the promissory note were invalid, [the Palomeras were] not the victim[s] of such invalid transfers because [their] obligations under the note remained unchanged. Instead, the true victim may be an entity (or individual) who believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note. It is also possible to imagine one or many invalid transfers of the promissory note may cause a string of civil lawsuits between transferors and transferees. [The Palomeras], however,

---

[9]     The Palomeras' burden to establish prejudice is distinct from the requirement a borrower seeking to set aside a foreclosure sale based on irregularities in the notice or procedures must tender the full amount due on the underlying debt for which the property served as security. (See *Lona v. Citibank, N.A., supra,* 202 Cal.App.4th at p. 112.) We need not address the tender rule or whether the Palomeras could establish a relevant exception to the rule.

may not assume the theoretical claims of hypothetical transferors and transferees for the purposes of showing a 'controversy of concrete actuality.' [Citation.] Consequently, we conclude [the Palomeras'] first cause of action lacks merit for the independent reason [they] cannot show the existence of an actual, present controversy between [themselves] and Defendants." (*Id.* at p. 515; see *Herrera, supra,* 205 Cal.App.4th at p. 1507 ["Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note."].) The Palomeras have failed to allege any facts demonstrating they suffered prejudice as a result of the supposedly defective assignments in this case. Accordingly, the demurrers were properly sustained without leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed. Deutsche Bank, MERS and CMC are to recover their costs on appeal.

PERLUSS, P.J.

We concur:

ZELON, J.

SEGAL, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.