Filed 5/7/13  Pham v. Bank of America CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| RICHARD WILSON PHAM, | C069629 |
| Plaintiff and Appellant, | (Super. Ct. No. CVCS101845) |
| v. | |
| BANK OF AMERICA CORPORATION et al., | |
| Defendants and Respondents. | |

In this action, commenced in August 2010, plaintiff Richard Wilson Pham sought to hold defendants Bank of America Corporation (Bank of America) and The Ryland Group, Inc. (Ryland) liable for wrongfully convincing him to secure a home loan he did not qualify for and could not afford in February 2006.  His claim is based on false information in loan applications that he claimed he was not aware of until years later.  The trial court sustained defendants' demurrers, concluding Pham's complaint was time-barred because he should have been aware of the false information in the loan applications when he signed the applications.  After Pham declined to amend his complaint, the trial court dismissed the case.  Finding no error by the trial court, we will affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2010, Pham commenced this action against Bank of America and Ryland by filing a complaint for damages asserting causes of action for negligence, fraud, concealment, negligent misrepresentation, constructive fraud, and gross negligence. In his complaint, Pham alleged as follows:

On or about December 11, 2005, Pham met with a Ryland sales representative to begin the process of applying for a loan to purchase a house in Live Oak for $394,998. Ryland is a home builder that also owns and operates a home lending business. Pham submitted documentation -- including bank statements, employment verification, and tax returns -- to Ryland in connection with his loan application.

At some point, Ryland told Pham that Bank of America would be funding the loan that Ryland was processing for him.

Unbeknownst to Pham, sometime between December 11, 2005, and February 8, 2006, Ryland completed loan application papers for Pham that overstated his monthly income and assets and contained false statements about down payment borrowing and subordinate loan status.

On February 8, 2006, Ryland sent Pham a promissory note to sign for a $306,600 loan at 5.875 percent interest, with a 30-year term to begin on April 1, 2006. On that same date, Ryland sent Pham a notice that the loan would be transferred to Countrywide Home Loans for processing and the total monthly payment to Countrywide would be $2,247.28.

Three years later, around February 20, 2009, Pham began asking that Bank of America refinance his loan "at an amount that would be realistic based both on his income and on the fair market value of the Property." Bank of America refused to do so.

After several requests, sometime on or after June 15, 2009, Pham "received copies of his original loan documents that he had signed for the [Bank of America] home loan that had been negotiated by RYLAND representatives, . . . copies of which had never

2

been previously provided to [him]." Upon receipt of those documents, Pham discovered inconsistencies between the information that had been submitted to the lender and the information he had originally provided to Ryland. For example, Pham had provided Ryland with documentation that his monthly income was $3,158, but the loan applications for the first and second loans showed that his monthly income was $6,200. Also, Pham had provided Ryland with statements showing that his combined account balance at the Golden One Credit Union was $2,158, but the loan applications showed that he had $45,000 on deposit with the credit union.[1]

According to Pham, he was "not reasonably aware of this discrepancy [between the information he provided Ryland and the information contained in the actual loan application] until on or about June 15, 2009, because he was rushed through the signing of documents on the day of closing of the loan on or about February 14, 2006, so as to prevent him from having and to deny him adequate time to review the loan documents." Pham claimed that Ryland "intentionally falsified the loan application, without [his] knowledge, in order to get [him] approved for a loan that he otherwise did not qualify for." According to Pham, if Ryland and Bank of America had not relied on the false information in the loan application, the loan would not have been approved and funded and he would not have completed the purchase of the home. Pham claimed as damages the costs associated with purchasing the property, the carrying costs of owning the property, damage to his credit score due to missed and late payments on the loan, and denial of credit due to the damage to his credit score.

---

[1] Pham also claimed that the loan applications showed that he "was not borrowing any portion of the down payment." Although he did not specifically allege it, the implication was that he had told Ryland he *was* borrowing part or all of the down payment.

In essence, Pham's claim in this action is that in February 2006, Ryland and Bank of America wrongfully convinced him to secure a loan that he did not qualify for and could not afford based on false information in the loan applications that Pham did not know about and could not have known about until June 2009.

Following the filing of Pham's complaint in August 2010, Ryland and Bank of America demurred. Both defendants asserted (among other things) that Pham's complaint was time-barred because Pham signed the loan applications containing the false information in February 2006 but did not commence this action until four and one-half years later. In support of their demurrers, both defendants asked the trial court to take judicial notice of the actual loan applications for the first and second loans that Pham had signed on February 14, 2006. The applications showed that not only had Pham signed the documents, but he had initialed each page of the documents as well.

In opposition to the demurrers, Pham argued that the loan applications were not judicially noticeable. He admitted, however, that the documents of which defendants sought judicial notice were the documents provided to him in 2009 (as alleged in the complaint). He also argued that his causes of action were not time-barred because they did not accrue until June 2009 "due to the active concealment by defendants, both during the application process and at the hurried closing of the financial transaction."

In sustaining the demurrers, the trial court first granted defendants' requests to take judicial notice of the loan applications on the ground the documents were not reasonably subject to dispute as being the applications alleged in the complaint. The court then ruled that all of Pham's causes of action were barred by the statute of limitations. The court reasoned that because Pham filed his complaint four and one-half years after signing the loan applications that contained the false information, his action was time-barred (the longest possible limitations period being four years) unless he could rely on the discovery rule to delay accrual of the causes of action. The court determined that Pham could not rely on the discovery rule because he did not "allege he was

4

prevented from reviewing the loan applications or that he could not have taken his time reading the applications." Instead, he alleged "only that he was 'rushed' through signing." As the court explained, "[Pham] alleges [that] once he finally received copies of the documents that he signed at closing, he discovered the alleged misconduct. Therefore, had he merely read the documents before him at the closing, he would have made the same discovery at that earlier time." The court concluded that Pham's "failure to carefully review the loan applications at closing was not reasonable, and the delayed discovery rule is inapplicable." Nonetheless, the court granted Pham leave to amend to add the allegation (if he could do so) that defendants "misrepresented the contents of the loan applications at closing."

Pham elected not to amend his complaint but instead chose to stand on his original pleading. On November 2, 2011, the court entered a judgment of dismissal in favor of both defendants. Pham filed a timely notice of appeal.

DISCUSSION

I

*Judicial Notice*

Pham contends the trial court erred in taking judicial notice of the loan applications over his objection. Under the circumstances here, we find no error.

"In determining the sufficiency of a complaint against demurrer a court will consider matters that may be judicially noticed." (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374.) "Evidence Code section 452, subdivisions (c) and (h), respectively, permit a court, in its discretion, to take judicial notice of '[o]fficial acts . . . of any state of the United States' and '[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.' [¶] Pursuant to these provisions, courts have taken judicial notice of the existence and recordation of real property records, including deeds of trust, when the authenticity of the documents is not challenged.

5

[Citations.]  The official act of recordation and the common use of a notary public in the execution of such documents assures their reliability, and the maintenance of the documents in the recorder's office makes their existence and text capable of ready confirmation, thereby placing such documents beyond reasonable dispute."  (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264-265.)

Although some of the other documents defendants asked the trial court to take judicial notice of were notarized and recorded, the loan applications were neither.  Still, we find no abuse of discretion in the trial court's taking judicial notice of the applications because the court used them only as confirmation of allegations already contained in Pham's complaint, and Pham did not contest the authenticity of the documents.

In his complaint, Pham specifically alleged that "the only loan application ever in fact signed by PHAM is dated February 14, 2006, the date of the closing."  (Italics omitted.)  He also alleged that in June 2009 he "received copies of his original loan documents that he had signed for the . . . home loan" and from review of those documents he determined that the loan applications for the first and second loans overstated his income and the balance in his credit union account and misstated that he was not borrowing any portion of the down payment.  When defendants asked the trial court to take judicial notice of what appeared on their face to be two loan applications signed by Pham on February 14, 2006, showing his monthly income as $6,200 and the balance in his credit union account as $45,000, Pham objected but at the same time admitted that the documents were those "provided to [him] in 2009 after repeated requests."

Under these circumstances, the trial court correctly determined that "the date of signature and the contents of the applications are not truly subject to dispute."  Moreover, because Pham did not deny that the documents supplied by defendants were, in fact, the loan applications he had alleged in his complaint, the trial court was entitled to treat those documents as "sources of reasonably indisputable accuracy" under subdivision (h) of Evidence Code section 452.  Accordingly, there was no error in the trial court's taking

6

judicial notice of the contents of the loan applications that Pham signed on February 14, 2006.

II

*Statute Of Limitations*

Code of Civil Procedure section 338, subdivision (d) provides a three-year statute of limitations for "[a]n action for relief on the ground of fraud or mistake." Under the statute, such a cause of action "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (*Ibid.*) "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808.)

Here, the trial court essentially determined that, as a matter of law, Pham *had* the ability to discover the false information in his loan applications earlier than June 2009. Specifically, in the court's view Pham could have discovered the alleged fraud in February 2006 if he had acted with reasonable diligence at that time and simply read the contents of the loan applications when he signed them. On that basis, the trial court concluded that Pham could not rely on the discovery rule to delay accrual of his causes of action against Ryland and Bank of America.

On appeal, Pham reiterates his contention that he did not discover the facts constituting defendants' fraud until June 2009, when he finally received copies of the loan applications he signed in February 2006, because defendants "actively engaged in a concealment of the facts surrounding their fraud by refusing to provide those documents to [him] for nearly three years." He does not address *at all* the trial court's determination that he failed to act with reasonable diligence when he signed the loan applications without reading them. Especially given the absence of any argument on the point by

7

Pham, we agree with the trial court that, as a matter of law, the discovery rule did not operate to delay accrual of Pham's causes of action here because he did not allege that he was in any way *prevented* from reading the loan applications when he signed them, nor did he allege that defendants, or anyone acting on their behalf, misrepresented the contents of those applications to him before or when he signed them. All Pham alleged was that he was "rushed" during the signing. As the trial court recognized, that allegation was not sufficient to show that Pham acted with reasonable diligence. Therefore, under the facts alleged here, as a matter of law, Pham should have discovered the false statements in his loan applications in February 2006, more than four years before he filed his complaint. Accordingly, his claims are time-barred.

Pham asserts that because Ryland solicited a loan on his behalf and acted as his broker with regard to that loan, with the approval of Bank of America (or, more specifically, the bank's predecessor-in-interest Countrywide), there was a fiduciary relationship between him and both defendants, and "[l]iability is imposed for concealment where the defendant is in a fiduciary or other confidential relationship that imposes a duty of disclosure."

To the extent Pham contends that he alleged in his complaint that a fiduciary relationship was created between him and defendants, the portion of the complaint that he cites in support of that contention alleges no such thing. Instead, it alleges only that defendants did not provide him with copies of his loan documents until about June 15, 2009, despite repeated requests for those documents. To the extent Pham means to contend that a fiduciary relationship arose because Ryland acted as his loan broker, he cites no authority for the proposition that the relationship between a loan broker and a borrower is a fiduciary relationship. In any event, whether a fiduciary relationship existed between Pham and defendants is of no moment in this case. The requirement under the discovery rule that the plaintiff must have been unable to make earlier discovery of the fraud despite reasonable diligence "has been relaxed in cases involving

8

confidential [or fiduciary] relationship, because facts which justify investigation in the ordinary case would not excite suspicion where the circumstances show a right to rely upon the representations of another and the same degree of diligence should not be required." (*Knapp v. Knapp* (1940 ) 15 Cal.2d 237, 242.) As the trial court recognized, however, here Pham did not allege that defendants misrepresented the content of the loan applications Pham signed. As the trial court explained, "[t]he 'terms that were allegedly falsified consisted of [Pham]'s own financial information" and Pham was "in a position to know, without explanation from a fiduciary, the amount of his income and assets." Even if there was a fiduciary relationship between Pham and defendants, nothing about that relationship prevented Pham from discovering the false information in his loan applications when he signed them in February 2006. Pham's allegation that he was "rushed" through the signing is not enough to invoke the discovery rule under the circumstances of this case, even if there were a fiduciary relationship.

Pham also argues that "[t]he duty to disclose may arise without any confidential relationship where the defendant alone has knowledge of material facts that are not accessible to the plaintiff." But plainly that rule does not apply here, because Pham has not identified any facts, material or otherwise, that were known only to defendants and were not accessible to him. The fact that his income and assets were overstated in his loan applications was immediately accessible to him had he simply read the applications when he signed them. Accordingly, this rule does not save him from the bar of the statute of limitations.

For all of the foregoing reasons, the trial court did not err in sustaining the demurrers on the ground Pham's complaint was time-barred.

DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


      ROBIE     , Acting P. J.


We concur:


     BUTZ    , J.


     DUARTE    , J.

10