Filed 3/11/15  Tutana v. Wells Fargo CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| IRMA TUTANA, | |
| Plaintiff and Appellant, | A139161 |
| v. | (Alameda County Super. Ct. No. RG12639695) |
| WELLS FARGO, N.A., et al., | |
| Defendants and Respondents. | |

Plaintiff Irma Tutana lost her Union City, California home (property) in a 2012 nonjudicial foreclosure sale.  In the midst of this foreclosure process, Tutana, acting in propria persona, sued numerous defendants in Alameda County Superior Court.  She brought six causes of action against them, in which she alleged that they did not have legal standing for a variety of reasons to conduct a nonjudicial foreclosure sale of the property and evict her from it.

At various times below, the trial court sustained demurrers by five defendants to Tutana's original and/or first amended complaints (the latter as she further amended it), dismissed each of the demurring defendants from the lawsuit, entered a judgment in favor of one of these defendants, and denied Tutana's motion to vacate the court's "judgment." Tutana has apparently appealed from three of these rulings, although it is not entirely clear from her notice of appeal.

1

Appearing before this court in propria persona also, Tutana makes a confused swirl of arguments without differentiating among the trial court's rulings. Her arguments are further flawed by numerous omissions, errors and improprieties that may well be the result of her lack of professional legal representation. Nonetheless, we must consider them as if they were presented by an attorney. "When a litigant is appearing in propria persona, he [or she] is entitled to the same, but no greater, consideration than other litigants and attorneys [citations]. Further, the in propria persona litigant is held to the same restrictive rules of procedure as an attorney." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639, followed in *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1444.)

Tutana appears to be arguing in part about the trial court's January 25, 2013 orders sustaining demurrers without leave to amend by defendants NDeX West, LLC (NDeX), Ashish Patel (Patel), and LSI Title Company (LSI), from which she has not timely appealed. We dismiss that portion of her appeal for lack of jurisdiction. Further, she has not met her burden as appellant of showing affirmative error in any respect regarding those rulings in favor of Wells Fargo and Golden West from which she has timely appealed. She fails to present any argument about two of these rulings, the trial court's June 20, 2013 denial of her motion to vacate the "judgment" and the court's April 30, 2013 order sustaining the demurrer of Golden West Savings Association Service Co. (Golden West) and dismissing it from the action. Furthermore, to the extent we can make sense of her arguments regarding the trial court's sustaining of the demurrer by defendant Wells Fargo, N.A. (Wells Fargo)—the one ruling from which she appears to have appealed and regarding which she makes some comprehensible arguments—Tutana fails to establish that the trial court erred. Accordingly, we dismiss a part of her appeal and otherwise affirm the rulings appealed from.

## BACKGROUND

In sustaining the demurrers of Wells Fargo and Golden West to Tutana's first amended complaint, the trial court took judicial notice of certain documents. This included recorded documents that indicate Tutana borrowed $300,000 from World

2

Savings Bank, FSB (World Savings) in November 2005, which loan was secured by a deed of trust to the property (deed of trust). The deed of trust indicated the beneficiary was the "lender," which was identified as World Savings, its successors, and/or its assignee. According to other documents judicially noticed by the court, World Savings subsequently changed its name to "Wachovia Mortgage, FSB," which subsequently was converted to a national bank with the name "Wells Fargo Southwest, N.A." and merged into Wells Fargo.

The trustee designated in the deed of trust was Golden West. The deed of trust states that the lender can appoint a successor trustee at any time.

In April 2012, NDeX commenced the nonjudicial foreclosure process. NDeX, via LSI, recorded a "Notice of Default and Election to Sell under Deed of Trust." The notice states that NDeX was "the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary" under the deed of trust; Tutana owed $24,335.49 in past due loan payments; a trustee sale of the property would occur if the default was not cured; and inquiries about payments should be made to Wells Fargo, care of NDeX. A declaration by a Wells Fargo vice president accompanying the notice indicates that Wells Fargo had contacted Tutana as set forth in former Civil Code section 2923.5, subdivision (a)(2).[1] On June 15, 2012, a substitution of trustee, dated April 27, 2012, was recorded and served. It indicates that Wells Fargo substituted NDeX for Golden West as trustee regarding the deed of trust.

---

[1] Former Civil Code section 2923.5, subdivision (a)(2) stated: "A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically." (Stats. 2009, ch. 43, § 1, p. 2228.)

In the midst of this nonjudicial foreclosure process, Tutana filed her original complaint and a notice of pendency. The trial court sustained demurrers with leave to amend by defendants Wells Fargo, Golden West and LSI. Plaintiff then filed a first amended complaint against the same defendants. NDeX sold the property in an August 2012 trustee sale to Patel. Tutana filed an "amendment" to her first amended complaint in which she added Patel as a defendant and alleged that Patel had engaged in fraud and collusion.

In her first amended complaint, Tutana brought six causes of action with various titles and allegations, not all of which match or are understandable. She entitled her causes of action "Quiet Title," "Wrongful Notice of Default," "Wrongful Foreclosure," Wrongful Substitution of Trustee," "Negligent Misrepresentation" and "Fraud Against All Defendants." Tutana did not allege that she was not in default on the loan. Instead, she alleged that defendants had no right to foreclose on the property because none was the original lender, the note holder was the "Securitization Trust" rather than Wells Fargo, neither Wells Fargo nor NDeX were authorized to foreclose on, and sell, the property and defendants had violated the "California Homeowner Bill of Rights" (HBOR), Civil Code section 2923.5, and California's Unfair Competition Law, Business and Professions Code, section 17200 et seq. She sought declaratory relief, compensatory, special, general and punitive damages, a permanent injunction against defendants' unfair competition and civil penalties.

Five defendants filed demurrers to Tutana's first amended complaint, as amended by her. On January 25, 2013, the trial court sustained the demurrers of NDeX, LSI and Patel without leave to amend and dismissed the three from the lawsuit. The court clerk mail-served the court's orders to Tutana that same day. On April 30, 2013, the trial court ordered that the demurrers of Wells Fargo and Golden West were sustained without leave to amend and dismissed these two defendants from the lawsuit. Also on April 30, 2013, the court filed a judgment of dismissal in favor of LSI and against Tutana.

On May 20, 2013, Tutana filed a "Motion to Vacate Judgment and Judgment Order." She did not identify the judgment she was challenging, stating only that she was

4

moving "to set aside the Dismissal Judgment that was entered against her." In support of her motion, Tutana repeated previous contentions. She also asserted that the People of the State of California, through the Attorney General, and Wells Fargo, had entered into an assurance in 2010 that required Wells Fargo to offer her a modification of her loan, but that Wells Fargo did not do so. On June 20, 2013, the trial court denied this motion, including in part because Tutana did not have a private right of action to enforce the assurance.

On July 5, 2013, Tutana filed her notice of appeal. She stated that she was appealing from two different rulings. The first was an April 30, 2013 "[j]udgment of dismissal after an order sustaining a demurrer." The second was the court's June 20, 2013 order denying her motion to vacate the judgment.

## DISCUSSION

Tutana makes numerous arguments why defendants had no legal standing to initiate and conduct a nonjudicial foreclosure trustee sale of the property and evict her. As we will discuss, none of her arguments establish the trial court committed any error.

### I. *We Have No Jurisdiction To Consider Some Of The Matters Raised By Tutana.*

Before considering the merits of any of Tutana's arguments, we consider our jurisdiction to consider them.

First, we conclude that, as NDeX argues, Tutana has not timely appealed from the court's order sustaining NDeX's demurrer and dismissing it from the action. We conclude the same regarding the court's orders of the same substance regarding Patel and LSI. All of these orders were filed on January 25, 2013 and mail-served by the court clerk that day. As NDeX correctly points out, a filed, written order of dismissal constitutes a judgment and is effective for all purposes. (Code Civ. Proc., § 581d [written order of dismissal signed by court and filed in an action constitutes judgment and is effective for all purposes].) Therefore, the court clerk's January 25, 2013 mailing of the orders commenced the 60 days within which Tutana could file an appeal from the court's

5

January 25, 2013 orders regarding NDeX, Patel and LSI[2]. (Cal. Rules of Court, rule 8.104(a)(1)(A).) Tutana did not file her notice of appeal until July 5, 2013, months after the jurisdictional deadline for doing so had passed.

Further, Tutana's filing of her motion to vacate the "judgment," if she intended the motion to apply to the January 25, 2013 orders dismissing NDeX, Patel and LSI, did not extend Tutana's 60-day period to appeal. California Rules of Court, rule 8.108(c) provides for an extension of time if a party, *within* its time to appeal, serves and files a valid notice of intention to move, or valid motion, to vacate the judgment. Tutana did not file her motion until May 20, 2013, almost two months *after* her 60-day period to appeal from the dismissal order had expired. Therefore, we dismiss Tutana's appeal to the extent she purports to appeal from the trial court's January 25, 2013 orders.

Although the parties do not raise the issue, we also consider from what exactly Tutana has appealed. Specifically, her notice of appeal does not identify from which April 30, 2013 "judgment" she is appealing. As we have indicated, the court issued two rulings that day. One is an order sustaining the demurrers of Wells Fargo and Golden West without leave to amend and dismissing them from the action. Such a written dismissal order, when filed, constitutes a judgment pursuant to Code of Civil Procedure section 581d. The other is a "judgment of dismissal" in favor of LSI. We are to liberally construe a party's notice of appeal " 'so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' " (*In re Joshua S.* (2007) 41 Cal.4th 261, 272.) It is reasonably clear from the record that Tutana intended to appeal from both April 30, 2013 rulings. As we have discussed, Tutana's appeal from the April 30, 2013 judgment of dismissal in favor of LSI is ineffective because of her failure to appeal from the

---

[2] The court subsequently filed a judgment of dismissal in LSI's favor on April 30, 2013. This judgment had no effect on Tutana's time to appeal the court's dismissal of LSI, which began when the court's filed its January 25, 2013 order. (*Glaze v. Visalia Improv. Assn.* (1959) 176 Cal.App.2d 288, 290-291 [motion to dismiss appeal granted pursuant to previous, similar version of Code of Civil Procedure section 581d because time to appeal ran from entry of dismissal order, not entry of subsequent judgment].)

6

previous January 25, 2013 order. However, no one argues that her appeal from the April 30, 2013 order dismissing Wells Fargo and Golden West was untimely. We conclude that it was not in light of her May 20, 2013 motion to vacate the "judgment." (Cal. Rules of Court, rule 8.108(c).) Accordingly, we turn now to Tutana's appeal from this order and from her motion to vacate it.

## II. *Relevant Legal Standards*

### A. *Standards Of Review*

#### 1. *The Trial Court's Sustaining Of A Demurrer*

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' [Citation.] 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.] In reviewing the complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153-1154 (*Gomes*).)

Generally, a court's order is presumed correct in the absence of appellant showing affirmative error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) That said, when reviewing a court's sustaining of a demurrer, we independently examine the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*Aubrey v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We treat demurrers as admitting all material facts properly pleaded. (*Ibid.*) However, we do not assume the truth of contentions, deductions or conclusions of law. (*Ibid.*)

#### 2. *The Trial Court's Denial Of A Motion To Vacate Or Reconsider A Judgment*

Tutana also appeals from the trial court's denial of her motion to vacate the "judgment." Such motions are governed by Code of Civil Procedure section 663. However, she cited as authority for her motion Code of Civil Procedure section 1008, subdivision (a), which authorizes motions for reconsideration. Regardless, a court's

7

denial of either motion, if appealable,[3] is reviewed for abuse of discretion. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206-1207 [motion to vacate judgment]; *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212 [motion for reconsideration].)

**B.** *Substantive Law Governing Nonjudicial Foreclosures*

"California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924 through 2924k, which 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.] 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' [Citation.] 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.] 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' " (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154.)

" 'A nonjudicial foreclosure sale is accompanied by a common law presumption that it "was conducted regularly and fairly." [Citations.] This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity. [Citation.] . . . It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity.' " (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 105.) As a result, a plaintiff must plead facts affirmatively demonstrating that a sale is somehow invalid. (*Fontenot v. Wells Fargo, N.A.* (2011) 198 Cal.App.4th 256, 270 (*Fontenot*) [given the presumption of regularity, "the burden rested with plaintiff affirmatively to plead facts demonstrating the impropriety" of a foreclosure

---

[3] There is a split of authority among the appellate courts regarding the appealability of a denial of a motion for reconsideration. (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1413.)

8

sale]; see also *Gomes*, *supra*, 192 Cal.App.4th at p. 1156 and *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1506 (*Herrera*) [noting absence of allegations of specific facts in affirming orders sustaining demurrers].)

### III. *Tutana's Brief Does Not Affirmatively Demonstrate Error.*

Tutana's arguments are neither persuasive nor, at times, comprehensible for a number of reasons. First, she does not properly present them. California Rules of Court, rule 8.204(a)(1) provides that a party should state each point under a separate heading, support the argument, if possible, by citation to authority and support references to any matter in the record by a citation to the volume and page number of the record where the matter appears. (Cal. Rules of Court, rule 8.204(a)(1)(B), (C).) Tutana does not comply with these rules. Instead, she presents a swirl of unsubstantiated arguments without regard for what argument relates to what ruling, what she has actually appealed from, what is in and not in the record, and what legal authority might relate to her contentions. As a result, it is difficult to make sense of her arguments. These deficiencies are sufficient bases for affirming the trial court's rulings. (*Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873 [appellate court not required to consider claimed errors when asserted without pertinent argument]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [court need not consider arguments when "the relevance of the cited authority is not discussed or points are argued in conclusory form"]; *Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 [appellate court may disregard any factual contention not supported by citation to record].)

Second, California Rules of Court, rule 8.204(a)(2)(C) provides that the appealing party should submit in his or her opening brief a summary of the significant facts limited to matters in the record. Tutana's briefs do not do so. She provides few citations to the record and repeatedly discusses matters outside of it.

Third, some of Tutana's arguments simply do not make sense. For example, she states, "No transfer of original title happened when World Savings Bank did the transaction of equity loan. Title is 'duly perfected' when all steps have been taken to make it perfect, that is, to convey to purchaser that which he has purchased valid and

9

good beyond all reasonable doubt.  In addition, neither is there a relationship that there is an executory contract of sale between parties under which the rent is credited against the purchase price, in whole or in part."  Other times, Tutana cites to matters which do not seem relevant to her appeal, and for which she provides no explanation.  For example, she states that she is "a victim of all these robosigning strategy [*sic*] done by Wells Fargo Bank as master servicer of different loans."  However, nothing in her complaint or the record suggests that any purported "robosigning" is relevant to her first amended complaint causes of action or the trial court's rulings.

We have discretion pursuant to California Rules of Court, rule 8.204(e)(2)(B) to strike Tutana's brief and order her to file an amended version that attempts to correct her errors.  However, based on our review of Tutana's briefs and the record, we do not think doing so would change any of our conclusions about the merits of her appeal.

Tutana also fails to present any argument as to two of the rulings from which she has properly appealed.  These are the trial court's June 20, 2013 denial of her motion to vacate the "judgment" and the court's April 30, 2013 order sustaining the demurrer of Golden West and dismissing it from the action.

For these reasons, we conclude Tutana does not meet her burden, as appellant, of establishing that the trial court affirmatively erred in these rulings properly appealed from.  (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.)  Further, we have performed our duty to independently examine the pleading to determine whether the facts alleged in Tutana's first amended complaint state a cause of action under any possible legal theory.  (*Aubrey v. Tri-City Hospital Dist.*, *supra*, 2 Cal.4th at p. 967.)  We conclude that they do not.

## IV. *Even Apart From Tutana's Deficient Briefing, The Record Reflects That The Trial Court Properly Sustained Wells Fargo's Demurrer.*

Tutana presents a number of arguments that appear directed at least in part at challenging the trial court's April 30, 2013 order sustaining the demurrer by Wells Fargo without leave to amend and dismissing it from the action.  Even if we consider these

10

arguments further, none are persuasive, particularly because Tutana does not address the grounds upon which the trial court dismissed each of her causes of action.

The court sustained Wells Fargo's demurrer (as well as Golden West's) to all of Tutana's causes of action because of, among other things, her "(1) failure to allege willingness and ability to tender the amount owed on the secured debt; (2) failure to allege any legally cognizable irregularity in the nonjudicial foreclosure process[;] and (3) failure to allege how any purported irregularity was prejudicial to [Tutana's] interests." The court further sustained Wells Fargo's demurrer to Tutana's negligent misrepresentation cause of action because, contrary to Tutana's claim, she had no post-foreclosure remedy pursuant to Civil Code section 2923.5 and to Tutana's fraud cause of action because she did not plead fraud with any particularity.

## A. *The Court Correctly Sustained Wells Fargo's Demurrer In Light Of Tutana's Failure To Allege Tender.*

Tutana gives us no reason to disagree with the court's order sustaining Wells Fargo's demurrer to her first five causes of action, for quiet title, wrongful notice of default, wrongful foreclosure, wrongful substitution of trustee, negligent misrepresentation and a portion of her sixth cause of action, for fraud. (We will discuss shortly the portion of her sixth cause of action that appears to allege an Unfair Competition Law cause of action.) Each of these causes of action relate to the propriety of the nonjudicial foreclosure process that led to the trustee sale of the property. As such, Tutana was required to allege tender, but did not, as the trial court stated in the first of its reasons for sustaining Wells Fargo's demurrer.

As the trial court noted, the general rule, which is based on equitable principles, is that plaintiff must allege tender of the full amount of the debt owed on secured property in order to set aside a foreclosure sale. (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578; *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1367.) While there are exceptions to this rule (*Fonteno*, at pp. 1372-1373, citing *Lona v. Citibank, N.A.*, *supra*, 202 Cal.App.4th at p. 113), Tutana does not plead any in her first amended complaint.

11

Tutana's only tender-related allegation is contained in her sixth cause of action, for fraud, and not incorporated into the others. Even if it were, her complaint would not survive demurrer. Tutana alleged that "there's no obligation to tender any amount on unsecured debt that was sold as securities and certificates to different investors through the process of securitization." However, Tutana's own allegations and the deed of trust that was judicially noticed by the court make clear that her debt was secured, not unsecured. Regardless, we are not aware of, and Tutana cites no authority supporting, any such exception to the general tender rule. Instead, she contends that "[t]he requirement of tender can't be imposed on homeowners to the enrichment of every Carpetbagger, co[n] man, or East Coast city slicker who files a notice with the County Recorder to stake his claim." This is not a legally cognizable argument.

Tutana also contends that the loan was actually paid in full because the property was fully conveyed to her in November 2005 and recorded in December 2005. Therefore, the foreclosure was invalid and no tender was required. As the trial court noted, no allegation of an outright conveyance was made in her first amended complaint. Furthermore, the full reconveyance document which her brief cites in support of this contention on its face appears to relate to another transaction. Thus, there is no reason to believe she could amend her complaint to allege that the property was conveyed to her without encumbrance or in a manner that extinguished her debt. Therefore, this argument does not excuse her failure to tender.

In short, Tutana's failure to allege tender is another reason for affirming the trial court's order sustaining Wells Fargo's demurrer to all of her causes of action, other than a portion of her sixth cause of action that we will shortly discuss. In light of our conclusion, we need not address the remainder of the trial court's reasons for sustaining the demurrer.

**B.** ***Tutana's Causes Of Action Against Wells Fargo Contain Other Fatal Deficiencies.***

Even if Tutana had alleged tender, and putting aside her repeated failure to allege all the requisite elements for a number of the causes of action identified in her first amended complaint as pointed out by Wells Fargo, her causes of action fail for additional

12

reasons. For example, in her first cause of action, for quiet title, she failed to allege any facts in support of her claim. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270; *Gomes*, *supra*, 192 Cal.App.4th at p. 1156; *Herrera*, *supra*, 205 Cal.App.4th at p. 1506.)

In her second cause of action, for "Wrongful Notice of Default," Tutana alleged that the notice of default filed by NDeX and LSI misrepresented the owner of the subject promissory note as Wells Fargo, when Wells Fargo was merely the loan servicer and the "Securitization Trust" was the actual owner. She also alluded to this securitization in her fifth cause of action, for "negligent misrepresentation." She did not allege any facts in support of these contentions either, rendering these claims also susceptible to demurrer. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270; *Gomes*, *supra*, 192 Cal.App.4th at p. 1156; *Herrera*, *supra*, 205 Cal.App.4th at p. 1506.)

Tutana also alleged in her second cause of action that the notice of default violated the HBOR. However, the HBOR did not become effective until January 1, 2013 (*Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 950), after the trustee sale of the property. Tutana does not contend that the HBOR applies retroactively. "[U]nless there is an 'express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application.' " (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841.) The HBOR does not state that it has retroactive effect (*Rockridge Trust v. Wells Fargo, N.A.* (N.D. Cal. 2013) 985 F.Supp.2d 1110, 1152), and Tutana has not identified any extrinsic sources indicating the Legislature intended that it have one.

In her third cause of action, for wrongful foreclosure, Tutana alleged that the foreclosure sale was improper because only the original lender and trustee could conduct a trustee sale. Tutana cites no authority—and we are aware of none—that supports such a limitation.[4] Furthermore, the judicially noticed deed of trust by its terms permits

---

[4] Indeed, as our colleagues in Division Four recently observed, the weight of authority allows a successor beneficiary to foreclose without ever recording the assignment of the beneficial interest in the deed of trust. (*Haynes v. EMG Mortgage*

13

assignment of the deed of trust to a successor beneficiary and appointment of a successor trustee and provides that they acquire the powers of the original beneficiary and trustee. (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117 ["[a] court may take judicial notice of something that cannot be reasonably controverted, even if it negates an express allegations of the pleading"]; *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754 ["whether the fact derives from the legal effect of a document or from a statement within the document, the fact may be judicially noticed where . . . the fact is not reasonably subject to dispute"].)

Tutana further alleged in her third cause of action, as well as in her fourth, for wrongful substitution of trustee, that defendants, and in particular Wells Fargo, could not produce the original documents evidencing her loan, although required to maintain and produce them. Such a production is not legally required. (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440 [rejecting contention that foreclosure of deed of trust is not valid unless beneficiary possesses the underlying note].)

In her fourth cause of action, Tutana also alleged that defendants had no lawful power to foreclose because there was no record of the substitution of NDeX as trustee. However, the court took judicial notice of such a substitution. Tutana does not challenge the court's doing so, nor does she argue that this substitution is deficient.[5] We conclude that it establishes that NDeX was substituted as trustee prior to the trustee sale, as judicial notice of the recorded document makes this a fact not reasonably susceptible to dispute.

_____

*Corp.* (2012) 205 Cal.App.4th 329, 336-337 (*Haynes*).) *Haynes* and cases cited therein make plain that there is no bar to foreclosure by a successor trustee on behalf of a successor beneficiary and that, indeed, such foreclosures are quite common.

[5] Although NDeX did not record this substitution until after recording the notice of default, our nonjudicial foreclosure process statutorily authorizes *agents* to record a default notice as well. (Civ. Code, § 2924, subd. (a)(1); *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515-516 [agent of beneficiary statutorily authorized to record notice of default].) The notice of default identifies NDeX as possibly acting in different capacities, including "agent." Tutana does not address why this was insufficient.

14

(*Poseidon Development, Inc. v. Woodland Lane Estates, LLC*, *supra*, 152 Cal.App.4th at p. 1117; *Scott v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 754.)

Although Tutana's further allegations in her fourth cause of action are unclear, she may also have intended to state that there was no "record" of an assignment of the deed of trust to Wells Fargo, and she asserts this on appeal. This too is unpersuasive. Given the presumption of regularity of the foreclosure sale, Tutana, not Wells Fargo, had the burden of showing there was not a valid assignment, but she did not allege any facts to support her contention, rendering any claim based on it susceptible to demurrer as well. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270; *Gomes*, *supra*, 192 Cal.App.4th at p. 1156; *Herrera*, *supra*, 205 Cal.App.4th at p. 1506.) Moreover, an assignment of a deed of trust need not be recorded before a nonjudicial foreclosure sale is conducted. (*Haynes*, *supra*, 205 Cal.App.4th at pp. 336-337.)

Tutana's reliance on the purported lack of an "assignment" also is insufficient because Wells Fargo could have properly exercised the authority to foreclose pursuant to the deed of trust by means other than assignment. Wells Fargo contended below, based on the judicially noticed documents, that it was the *successor* to the original lender, World Savings, via a corporate name change, conversion to a national bank, and merger. Tutana does not establish that such a transfer requires an assignment. As Wells Fargo points out on appeal, in a corporate merger that is effective, the surviving entity "succeeds to the rights, property, debts, and liabilities, without other transfer." (9 Witkin, Summary of Cal. Law (10th ed. 2010) Corporations, § 198, p. 968.) Thus, any "no assignment of the deed of trust" claim is also susceptible to demurrer because it does not establish Wells Fargo lacked the authority to foreclose. (See *Fontenot*, *supra*, 198 Cal.App.4th at pp. 271-272 [affirming the sustaining of a demurrer in part because plaintiff did not allege there was no assignment of the note in any manner].)

Tutana also argues on appeal that the foreclosure sale of the property was somehow improper because she continues to hold the "original TITLE" to the property. We cannot make sense of this contention. It appears to be a reference to her allegation that she acquired title to the property in 1987, before entering into the note and deed of

15

trust with World Savings.  However, she does not dispute that she thereafter borrowed money and encumbered the property to secure the loan.  Her earlier title to the property became subject to the lender's security interest once she did so and could be extinguished via foreclosure if she defaulted, which she does not deny she did.

In the first part of her sixth cause of action, for fraud, Tutana alleged that the "junior loan," presumably a reference to the loan at issue here, was sold and transferred without notifying her in writing.  We are not aware of, and Tutana does not cite, any requirement that she be so notified before the nonjudicial foreclosure process can be initiated. (See *Fontenot*, *supra*, 198 Cal.App.4th at p. 272 [noting that assignments of debt are commonly not recorded and the promissory note could have been assigned in an unrecorded document that was not disclosed to the plaintiff]; *Haynes*, *supra*, 205 Cal.App.4th at pp. 332-337 [statute requiring notice of assignment of mortgage does not apply to deeds of trust].)  Tutana also alleged that defendants violated former Civil Code section 2923.5, subdivision (a),**[6]** because "[n]one of the [d]efendants assessed [p]laintiff's financial situation correctly."  Tutana failed to allege any facts in support of this allegation as well, rendering it susceptible to demurrer too.  (See *Fontenot*, *supra*, 198 Cal.App.4th at p. 270; *Gomes*, *supra*, 192 Cal.App.4th at p. 1156; *Herrera*, *supra*, 205 Cal.App.4th at p. 1506.)  And in any event, as the trial court concluded, former Civil Code section 2923.5 was not a basis for a claim brought after a trustee sale has occurred, as was the case here.  (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 235 ["the *only* remedy provided is a postponement of the sale before it happens"].)

In the second part of her sixth cause of action, Tutana alleged in relevant part that defendants engaged in "deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties. . . .  Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to [p]laintiffs and other California consumers who have been harmed, and/or be enjoined from continuing in such practices

---

**[6]** We quote this former governing provision in footnote 1, *ante*, page 3.

16

pursuant to California Business and Professions Code [s]ections 17203 and 17204. Additionally, [Tutana] is therefore entitled to injunctive relief and fees as available under California Business and Professions Code Sec. 17200 and related sections." Although she did not make any factual allegations of "deceptive business practices," she incorporated all of her other allegations in this cause of action. As indicated by our discussion herein, none of these allegations indicates wrongdoing. Therefore, this claim is susceptible to demurrer as well. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270; *Gomes*, *supra*, 192 Cal.App.4th at p. 1156; *Herrera*, *supra*, 205 Cal.App.4th at p. 1506.)

**V.** ***The Court Did Not Abuse Its Discretion In Not Granting Leave To Amend.***

If a trial court sustained a demurrer without leave to amend, as here, " 'we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. . . . If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . . The plaintiff has the burden of proving that an amendment would cure the defect.' " (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154.) On appeal, Tutana does not meet her burden of proving that there is any reasonable possibility that her further amendment of her complaint would cure the numerous defects in her first amended complaint. We concluded that there is none. For example, when the court ordered that LSI's demurrer to Tutana's original complaint was sustained with leave to amend, it pointed out to her, among other things, that she needed to allege tender. Her failure to do so in her first amended complaint indicates that she would not be able to cure this fatal defect upon subsequent amendment.

In short, we find no reason to reverse any portion of the trial court's sustaining of Wells Fargo's demurrer without leave to amend. In light of our conclusions, we do not address the remainder of the arguments made by the parties.

**DISPOSITION**

We dismiss Tutana's appeal to the extent it argues the trial court erred in sustaining without leave to amend the demurrers of NDeX, Patel and LSI.  We otherwise affirm the rulings appealed from.  Respondents are awarded their costs of appeal.

_____
STEWART, J.

We concur.



_____
KLINE, P.J.



_____
RICHMAN, J.